Thank you. If it pleases the Court, my name is Michael Bigelow, and I represent Petitioner Eric Berg. It seems to me that when you hook someone up to 50,000 volts of electricity without justification or security concerns, security concerns, it cannot be that the test is whether or not the device was seen by the jury, nor can it be that if a jury returns a verdict of guilty, the error is harmless, or in the words of Brecht, it's had no substantial or injurious effect on the verdict. The test has got to be something else. Otherwise, there's no reason for us to be here. An argument for a per se rule with no examination of prejudice? No. Well, that is, of course, the rule that I would like. That's not the rule the Court is going to adopt. But the burden has got to be ---- It's not a matter of adopting. I'm sorry. Under current case law, prejudice is required, isn't it? Under current case law, prejudice is required. Under current case law, it seems to me, at least, that the burden, given these circumstances, no examination or hearing on the part, you know, an unjustified, an unjustified imposition of either Shackling or the React Belt, but here we're just dealing with the React Belt. Unjustified imposition of that particular device, the burden of prejudice has got to be on the prosecution. It's got to be on the government. Justice O'Connor spoke very well to this very same sort of issue in Riggins. Any prejudice is speculative. How can we know what the prejudice is when the jury doesn't see the device, when the jury sees, when the jury can't see what is in the mind of the defendant who is affected by the device? I handed up a case, and I apologize, I panicked. I handed up a case to the Court that I did not think I had actually cited. In fact, that case is string-cited in Marr, and it is cited in my brief. But the prejudice of the device, and we're talking about the Stun Belt, just that particular device. The prejudice of the device is well known to this Court. It's acknowledged by this Court. It's acknowledged by other courts. The psychological effect of the device, the chilling effect. Now, in every other constitutional case I've ever read, chilling equates to prejudice. There's prejudice. There's no way to get around the prejudice. It is there. Now, this Court in other cases has held that shackling, mere shackling, mere shackling, mere shackling is not so prejudicial. And I don't want to be lecturing the Court here, but I'm — and what I'm going to say sounds like it, but I've appeared often enough. I hope what I'm taking is — what I say isn't taken that way. But this Court has on other occasions, the Supreme Court has on other occasions, other courts have said that mere shackling, chains, that sort of thing, is a last resort and shouldn't be imposed but as a last resort. But we know, trial lawyers know, that shackling, this Court knows, shackling is a first resort. They do it as a matter of course, without thinking about it. They just do it. What concerns me as a trial lawyer, as an appellate lawyer, as a humanitarian I think I am, is that this Court will come out and say, well, this is an extreme form of shackling. It is an extreme form of security. And we're going to give you these guidelines that — under which we will permit it to be imposed. But courts are now paying lip service to what this Court and other courts have said years ago about — about chains, only as a last resort. Roberts. Did you try the case? Carvin. I'm sorry? Roberts. Did you try this case? Carvin. I did not try the — I was not trial counsel in this case. It was a State case tried out of Guairica or, you know, Siskiyou County, someplace like that. Roberts. Your — your arguments are interesting. But does that relieve trial defense counsel of the obligation to put on the record exactly how the presence of this device is affecting the attorney's ability to present evidence, the defendant's, his client's ability to communicate with him and observe freely what's going on in the trial and that sort of thing? I can think of a dozen things that could be put on a record that would help establish prejudice. Carvin. Sure. It helps establish prejudice 10 years down the road or three years down the road for the appellate court. But the prejudice is known. The prejudice is known to anyone with an ounce of sense. Roberts. Yes, but you can't — you can't go to a per se rule. It's not structural error. We know that. I mean, this is a habeas case. Carvin. Yes. It's governed by a Supreme Court law, so we know it's not structural error at this point. Carvin. Correct. Roberts. So where does that leave us in this case? Carvin. It leaves us — Roberts. We can't presume prejudice. That's not — that's not what we can do in this case. So we have to look at the record. And we — some of us may have concerns and may share your concerns about that. But this is habeas. Carvin. We don't have to look at the record. Justice O'Connor says we don't have to look at the record. Looking at the record is futile. You look at the record, you don't get anything. That's what she said in Riggins. That's exactly what she said in Riggins. She said, looking at a record doesn't tell us the prejudice, doesn't give us the prejudice. I'm paraphrasing it. I sure hope I'm right. But the — Roberts. So getting back to Judge Hawkins' question, we see in other cases involving Shackling and React bail, it says that you have attorneys objecting. They're making a record. They're saying, look, I can't communicate with my client. My client is in pain. My client has to sit up in the chair. That's the kind of record that is made contemporaneously. So getting back to Judge Hawkins' question, why does that relieve trial counsel responsibility to make the kind of record from which we can draw prejudice? Because in the case of the React bail, and this is a very old case, not that old, the Ninth Circuit has recognized the chilling effect of the React bail. It seems to me that no more need be said. He did make a record. He didn't articulate it particularly well. I'll grant you that. He did make a React — he did make a record to the extent that he objected to it. But as to the prejudice itself, I — I think the Court is correct. It doesn't — he did not say, I can't communicate, I can't do this, I can't do the other thing. It's only recently that we, as trial counsel, as trial lawyers, know what to put on the record. Because this Court and other courts have told us what to put on the record with — with respect to that. But within the court setting itself, it was apparently, if the record is to believe and the testimony of Mr. Berg is to be believed and Mr. Bergstrom is to be believed, trial counsel is to be believed, the prejudice within the courtroom itself is palpable. They sat apart from each other. They did not interact with each other. They did not speak. Mr. Berg identifies how he had to sit in the chair. That is all there. That is all in front of the — in front of the jury. But again, I go back to the burden, it seems to me, is the prosecution's to prove that there was, under these circumstances, that there was no prejudice. And I think under these circumstances, the — the prosecution can't do that. It ought to be reversed, and it ought to be reversed with a real strong and clear language to courts that follow, so that 10 years down the road, we're not — well, anyway. Thank you for your argument. You have about a minute left. You can use it for rebuttal if you like. Thank you. Counsel, Mr. Reilly. Thank you. May it please the Court, Justin Reilly, on behalf of the Respondent Appellee. Just to be clear, toward the end of counsel's argument, he mentioned that it was the appellee's burden to show that it was not prejudicial. I respectfully disagree with that on habeas review. I think what he argued was it ought to be. Oh, I'm sorry. Are there — does the record tell us what somebody wearing one of these belts must do or not do to make sure that it's not set off? I don't know if you try to run out of the courtroom or something like that. Right. But do you have to remain pretty much still and sit straight up and not move at all? There was an advisement, much like a Miranda card, but probably about three times as long. It was read into the evidentiary hearing record by — I can't remember which officer it was, but it was a witness for the Respondent. I'm sorry I can't direct you to the exact page. But I believe that advisement was also attached as an exhibit to the evidentiary hearing transcript. And that would describe what an individual wearing a REACT belt could do or not do? It was given to the appellant by one of the officers. I don't know how many times, but at least on the initial fitting. And it was circumstances which would cause officers to activate the belt. Now, even though it was about a medium-sized paragraph or maybe even longer of things that would cause officers to activate the belt, those terms weren't further defined for the Defendant. Could a Defendant wearing a REACT belt lean over and have a private conversation with his counsel? Would it physically restrain him from doing so, or would — if he — if he leaned over to talk with his counsel, would that cause the belt to — could that cause the belt — In my opinion, absolutely not. But it's a very — Does the Defendant take notes? Absolutely. There's nothing in the record that shows that, but these aren't the furtive sorts of movements that would cause a — it's a very subjective thing, I'll admit. It's basically a clicker, a button held by the officer. And if the officer feels that the Defendant is violating one of those enumerated lists of things not to do, then the officer is — If a Defendant had a visceral reaction to a statement made by a witness on the stand that he, the Defendant, thought was just absolutely untrue and put his hand on the table or rose up an inch out of his chair to demonstrate how — his reaction to what was being said? I'd love to be able to help you on that, but again, it's a subjective reaction. The officer has to decide whether or not the Appellant is a danger of flight or a danger to others. And — I would assume no, but — What happens if the belt's activated? I believe the record says 50,000 volts of electricity are transferred to the Defendant. And what happens? For about eight seconds, I recall, and it immobilizes the person wearing it. And different things could happen. It could cause heart palpitations. It could cause a Defendant to lose control of his bowels and his bladder. Possible things. But for the most part, it immobilizes the wearer. So what do you make of the transcript where the Defendant says, question, were you able to interact with your lawyer? Answer, no. I couldn't even sit in the chair. The React belt would sit on my left side right here. The chair thing right here, I'd have to sit up like this all the time. On the edge of the chair because I couldn't sit back because it was behind here. Did it cause you to have difficulty communicating with your lawyer? Answer, yes. Why is that not enough to show prejudice? Why is that not enough? Yeah. He says, he testifies, he was not able to interact with his lawyer. This is testimony, I believe the trial was about 10 years ago or maybe less. This is just recently in an evidentiary hearing. Appellant knows what he's supposed to say. That's what evidentiary hearings in support of a habeas petition are for, right? Correct. But the point I'm trying to make is. If they put none of this in the record at the habeas hearing, you'd be up here telling us not only is there no evidence of prejudice in the trial court record, there's not a shred of it in the evidentiary hearing. Absolutely. Because it's his burden to show in terms of evidence. Right. This is what the record is. If you're going to say disbelieve the record, I don't think you're going to get very far. My question is, given that record, why isn't that enough if we believe and credit the testimony that he is unable to interact with his lawyer because of the use of the stung belt? Why isn't that enough? This is the point I'm trying to make. Now he's saying that I couldn't even sit in my chair. Back at trial, a two-week-long trial, makes no complaints. This is not a man who's stranger to complaints. Sixty different complaints. I hate to interrupt you. In prison. Let's assume a hypothetical because you want to fight me on the facts. Okay. And that's not getting us anywhere. Okay. Let's say you have unimpeachable testimony and we believe the witness that he can't talk to his lawyer because of the use of the stun device. He cannot interact with his lawyer during trial. Why isn't that enough? If Your Honor is trying to limit the hypothetical to essentially a gag, if we could, going back to Illinois v. Allen, is that what I want to do? You can answer it any way you want to. Okay. If Your Honor is trying to set up a hypothetical much like Illinois v. Allen, which kind of says if a defendant is shackled and gagged, the three harms are the jury is going to see the shackle. I guess the question is at what any point, assuming these kinds of facts, or at what point does the burden shift to the government, to the State? Does the burden to show prejudice? Yes. In a hypothetical case, let's say the trial defense counsel gets up and says, this REACT bill, Your Honor, I can't communicate with my client. He can't take notes. He can't slip me a note telling me when he thinks a witness is lying or a question I might ask in cross. He's intimidated. I'm my paralegal and I are watching the jury. They're very distressed by the fact that he sits up unemotionally and doesn't respond to any of this testimony. At what point in time is trial court required in that kind of circumstance to say, to shift the burden to the State to show lack of prejudice? Does it ever occur? At the risk of creating law, I would imagine that the trial court would then be under some sort of obligation to reopen the evidentiary hearing and consider, as this Court has set forth, what the alternatives are and whether or not this is still a necessary thing. And okay. No, but we're looking in hindsight on this. And my question is, when you have an uncontested interference with communication with counsel, why isn't that enough to show prejudice? I believe that the shackling cases go, as the Court is well aware, just recently in Deck v. Missouri, the prejudice analysis is the three forms of harm, which are the jury's perception of the defendant. Right. And that's out of this hypothetical. Right. I'm just talking about communication. And then the last one, if we can throw that out to you, the middle one, those are all factors to consider, whether or not there was prejudice. And here we – two of the factors are not even precedent because – Right. I'm focusing on the one factor. Is that – is the one factor enough? Is that what you're asking? Is that one factor enough? I believe that the reviewing court has to look at the totality of the circumstances in finding whether or not there's prejudice. So you think it might be because you're not answering my question? Well, I can imagine that possibly there might be a situation if a defendant was gagged, could not speak with his attorney. Well, why isn't this an electronic gag? Tell me the difference. He had the opportunity to speak with his client, as both of them, I think, conceded at the evidentiary hearing. They talked during recess. Two-week-long trial. They talked during recesses. They talked evenings at the jail. They got to talk to each other. There was an abundance of communication. Now, I can only imagine that maybe Appellant is arguing that there needed to be contemporaneous communication. Yes. But he points to none. He doesn't tie this hypothetical lack of communication, which we don't even know if there was, to the verdict. And that's why the error must be harmless. Well, it's almost impossible. It's almost impossible to do that. I mean, it's – you can say, well, I would have told my attorney to object. But, in fact, that's an important component of the trial. That's why we have the presence requirement. The presence requirement would mean nothing if we had the idea that you couldn't talk to your lawyer. Appellant is actually in the unique position of holding all the evidence that would prove whether or not he didn't get to tell his attorney something. It's such and such a time. I wanted to tell my attorney to object to that. That wasn't true. I didn't get to. We haven't heard any of that. When the – Ten years later, nothing. When the magistrate judge recommends and the district court accepts the statement and the recommendation that this court cannot find that the react about so dominated Petitioner's thoughts that his ability to be present at trial, communicate with counsel, and participate in his defense was substantially impeded, what's our standard of review of that statement? I believe that this court reviews a district court's findings de novo. All right. Pardon? Thank you. Okay. Thank you for your argument, counsel.  We have a little bit of time for rebuttal, counsel. Page 216 of my excerpts of record reflect the advisement that was given to the defendant at the time. Immobilization causing you to fall to the ground, possible self-defecation, possible urination for the following actions. Outbursts, quick movement, any hostile movement, any tampering with the belt, failure to comply with the verbal command for movement on your person, any attempt to escape custody, any loss of vision of your hands by the custodial officer. That's a big one because guys are moving their hands. I may move in front of my client. I may move in front of my client, causing the officer to lose sight of his hands. He may get zapped. That really is a scary thing because we move around in the court. That was read to him. It was not given to him. He did not sign it according to the testimony at the habeas hearing. And Duckett speaks to shackling except in an extreme form is harmless error. It might be structural under these circumstances. There was no hearing on it, so the magistrate court found. There was no hearing. It is an extreme form. Let's make it structural under these circumstances. Why not? How does that square with Gonzales where we said it wasn't structural? I'm sorry, Your Honor. How does that square with Gonzales when we said that an evidentiary hearing was required that you had to prove prejudice? Your Honor, I apologize. I cannot hear you. That's fine. It's my fault. No, no. I sometimes don't speak up well enough. How does that square with Gonzales where we addressed the issue and sent it back for an evidentiary hearing on prejudice? We said it wasn't structural error. Yeah, I know. But in Duckett, again, is the risk of doubt is on the State. And Duckett cites the Supreme Court case in the full site I didn't include, but it says it rejects the language in Brecht which places undefended the burden of showing prejudice. Now, hopefully, I don't have that completely wrong, and I don't think I do. And with that, I would thank the Court once again. Thank you for your argument, Mr. Bigelow. I appreciate seeing you again. Good argument by you both. The case just argued will be submitted, and we'll proceed to the last case on the calendar, and that's Fry v. the Drug Enforcement Administration. Thank you.
judges: Canby, Thompson, Hawkins